LYDIA E. WILDS,

vs.

DAVID S. WILDS and others, being the heirs at law of JAMES D. WILDS, deceased, and legal representatives of such of his heirs as have died, MARGARET W. CULBRETH, THE PRESIDENT, DIRECTORS AND COMPANY OF THE FARMERS' BANK OF THE STATE OF DELAWARE, MOSES HARRINGTON, HENRIETTA TSCHUDY AND HARRY C. TSCHUDY, administrators of WILLIAM W. TSCHUDY, deceased, SAMUEL CATTS, THE KENT COUNTY MUTUAL INSURANCE COMPANY AND THE FRUIT GROWERS' NATIONAL BANK OF SMYRNA.

*Kent, March T.* 1899.

On application of the complainant, an aged woman, in the eighty-fifth year of her age, a commission was ordered to take her testimony *de bene esse*, as a witness in her own behalf.

Rule 47 Providing for the issuing of commissions to take testimony *de bene esse* of witnesses who are aged, or infirm, etc., does not in terms apply to parties, nor is it amended so as to apply to them by the statute removing the incompetency of parties as witnesses, but it is within the inherent powers of the Court of Chancery to order a commission to take testimony of a party in such case.

The promulgation of a general rule does not exhaust the inherent power of the Court to make a special order in a proper case, to which the rule does not apply.

BILL IN EQUITY.—The bill was filed to obtain a decree striking off and annulling an entry of satisfaction upon the record of a recognizance in the Orphans' Court, which was alleged to have been signed by mistake.

The facts alleged in the bill were as follows:—

The complainant as widow of James D. Wilds, whose lands, after his death, had been sold in partition proceedings in the Orphans'. Court for Kent County to his son David S.

Wilds, whose recognizance was taken for the purchase money, was entitled to the interest annually on one-third part thereof during her natural life. Two-thirds part of the recognizance had been paid to the parties entitled, and it was admitted by the bill that upon the record of the recognizance appeared an entry of satisfaction of her interest signed and sealed by the complainant, dated October 18, 1887, and attested by W. H. Hobson then Clerk of the Court. The entry was so signed and sealed by mistake, and complainant never intended to satisfy her interest in the recognizance, and had no knowledge or suspicion that her interest was apparently satisfied until about a year before the filing of the bill.

She was an aged woman, in the eighty-fifth year of her age, and but little acquainted with business matters, and her mistake in signing the entry of satisfaction grew out of the fact that she was also entitled to an interest in a recognizance given by her son John N. Wilds, which had been paid and was the one intended to be satisfied.

The respondents included all the heirs at law of James D. Wilds, deceased, and the legal representatives of such of his heirs at law as had died, and the persons or corporations having liens upon the property which was affected by the lien of the recognizance, the first lien after which was a mortgage held by Margaret W. Culbreth as assignee of Jacob Erb. The other respondents were creditors having liens by judgment, mortgage and recognizance.

Service was made upon and appearances entered by all the respondents.

The bill was filed May 15, 1897, and the only respondents who filed answers were Susanna George, the widow of John N. Wilds, a son of James D. Wilds, and the Farmers' Bank of the State of Delaware, a judgment creditor, both of whom, in their answers, denied the equity of the bill.

The respondent Margaret W. Culbreth entered a general demurrer.

On January 23, 1899, the death of Margaret W. Culbreth was suggested and Susan C. Sudler, her administratrix, was admitted to defend.

On August 28, 1899, the complainant filed her affidavit in which she deposed that she was an aged witness of the age of eighty-seven years; that she was very weak and infirm and that she was the sole witness to a material fact involved in said cause and was a material witness for the complainant in said cause.

Upon this affidavit *James H. Hughes* and *Lewis C. Vandegrift*, for the complainant, made application for a commission *de bene esse* to take the testimony of the complainant as a witness.

They contended that, although Rule 47 for taking of testimony of witnesses who are aged, or infirm, or going out of the State, or of one who is the sole witness to a material fact, does not specifically mention parties to a suit, yet, that under the statute making parties competent witnesses in a cause, the rule should be considered as extended to cover the case of a party.

The Act of April 6, 1881, provides that no person shall be incompetent in any civil action or proceeding, whether at law or in equity, because he is a party to the record or interested in the event of the suit or matter to be determined.   16 *Del. Laws, ch.* 537, *Rev. Code* (1893) 798.

This statute must be held to operate in effect as an amendment of the rule, so far as to require that the word "witness" in the rule shall be so construed as to include parties.

*H. Ridgely, Jr.,* for the respondent, Susan C. Sudler, Adm'x. of Margaret W. Culbreth, deceased, she being the only one of the respondents represented at the time of hearing the application, contended that the rule applied only to witnesses and not to parties.   It is true that it had been provided by the statute, since the adoption of the rule, that, being a party to the record shall not operate to disqualify a person from testifying in any civil action or proceeding at law or in equity.

This statute, however, does not seem, upon a fair construction, to operate so as to authorize the issuing of a commission to take the testimony *de bene esse* of a party under rule 47, which distinctly states that the application shall be

by either party and the commission issue for the examination of "any of his witnesses."

There would seem to be a reasonable difference between the issuing of such a commission for taking the testimony of a party and that of an ordinary witness. The party to the cause has the power to expedite the hearing and, if by reason of his own infirmity he desires to have his testimony taken speedily, he may, by greater diligence, bring the cause to issue and a hearing more quickly.

He has, likewise, the control of his own movements and actions, as he would not have over those of a witness.

THE CHANCELLOR was of opinion that to issue a commission *de bene esse* for taking the testimony of a party to the cause was not within the precise terms of Rule 47, but it did not follow that it was not proper to grant the order applied for.

The taking of testimony *de bene esse* was an ancient practice of the Court of Chancery in cases where it appeared (1) that the witness was seventy years of age and upwards; (2) that the witness was about to leave the kingdom, or, as it would be here, the State; (3) that the person whose testimony it was proposed to take under the commission was the sole witness to a material fact.

Under the English practice which we follow, the issuing of such commissions was not confined to these cases, but the power was exercised by the Court in other cases of urgency, with this difference, that in cases above stated the order would be granted as of course, whereas in other cases it would involve the exercise of a judicial discretion applied to each particular case.

The rule in question did not exhaust the power of the Court, nor was it intended so to do. It could in no sense be properly held to limit the ancient powers of the Court with respect to the preservation of such testimony. The rules were not intended, and could not be construed either to create or to limit the jurisdiction of the Court. Each rule was simply intended as a regulation of practice in cases to which it relates.

In any case not covered by a rule, the Chancellor considered that he was remitted to the inherent power of the Court to regulate its practice according to the well defined and authoritative precedents, and that the power inheres in the very constitution of the Court to make such general orders covering classes of cases, or such special orders in any particular case as may from time to time be found necessary.

He called attention to the fact that the entire body of rules, as adopted in 1868, commonly known to the profession as "Bates' Rules," were pervaded with the idea that where the general rule failed to meet the requirements of a particular case, a special order would be made with respect thereto. Chancellor Bates in speaking of the rules as a whole, in his preface, concluded by saying "on the contrary, some of them must be considered as experimental, and the whole will be subject to revision from time to time for such amendments and additions as experience shall suggest."

The Chancellor then held that the effect of the statute, 16 *Del. Laws ch.* 537, *Revised Code* (1893) 798, being to render a party to the cause a competent witness, which was not the case when Rule 47 was adopted, he was remitted to the English precedents for guidance in determining whether a commission should issue, treating the complainant for that purpose as a witness and not as a party; that being the test, it was manifest that an order for a commission should issue.

A commission was accordingly issued to William M. Hope, Esq., to take the testimony of Lydia E. Wilds *de bene esse* and interrogatories and cross-interrogatories were filed and testimony was taken by the commissioner and duly returned.

Subsequently, on March 19, 1900, the death of the complainant was suggested and James L. Wolcott, her administrator, was admitted as party complainant and filed an amended bill.

No argument was had on the demurrer, however, and subsequently, on motion of *James H. Hughes*, solicitor for the complainant, with the consent of the solicitors for the respondents, and upon reading the papers in the case and it

Note.

appearing that all costs had been paid, it was decreed that the cause be discontinued.

NOTE.—The practice in the Court of Chancery for securing testimony of witnesses who are old and infirm, sick and in danger of death, or were going to distant countries, or where there was a single witness to a material fact·in such plight, has been exercised from the earliest times by two distinct methods.

One was the issuing of a commission to take testimony *de bene esse* of such a witness, which was issued in a cause pending, and the other was by a bill to perpetuate testimony.

The first method was adopted in causes pending in Chancery; the other required the filing of a bill and was resorted to for the purpose of perpetuating testimony with respect to matters not then in litigation in Chancery.

Both methods were adopted almost without change from the civil law, which had a two-fold method of examining witnesses *in perpetuam rei memoriam.* One was the common examination resorted to without waiting for a *litis contestatio* and the party moving in the matter gave notice, if possible, and proceeded to examine his witness and the depositions were given in case the witness died or went abroad, otherwise they went for nothing.

The other was the examination *in meliori forma ad transumenda instrumenta* which required a *litis contestatio* before the examination, there being no need of so much celerity in proving instruments as, in the other case, of examining witnesses, who might die or depart. *Gilb. For. Rom.* 118, 119; *Hinde*, 365.

It will be readily seen how nearly in this, as in other cases, the English Chancery practice follows the analogies of the Roman law.

It is a motion of course, in English Chancery practice, to examine, *de bene esse,* a witness above seventy years old. *Rowe vs.* ————, 13 *Ves.* 261; *Prichard vs. Gee*, 5 *Madd.* 364; *Anonymous*, 6 *Ves.* 573.

It may be done on other just and reasonable grounds as was said by Lord Erskine in *Shelley vs.* ————, 13 *Ves.* 57. In this case the Lord Chancellor said, "upon the reason and justice of the case I should have no doubt in granting this application; though it does not come within any of the three cases: 1st, witness of the age of seventy years; secondly, witness quitting the kingdom; thirdly, a fact depending upon a single witness; and, as Lord Thurlow said (in *Pearson vs. Ward*, 2 *Dick.* 648) I would make a precedent if there is not one." Even the illness of a witness has been held to justify an application of this nature; though in such case, Lord Eldon said, it will be looked at with jealousy, and will not be permitted, unless upon absolute necessity. *Bellamy vs. Jones*, 8 *Ves.* 32.

It was done in the case of two persons without stating their age in *Lord Cholmondeley vs. The Earl of Oxford*, 4 *Bro. C. C.* 156. In *Fitz-*

*hugh vs. Lee, Amb.* 65, the application was for a commission *d. b. e.* to examine the surviving witness to a will upwards of sixty years of age and greatly afflicted with gravel; the parties all living in Virginia. The application was granted because of the circumstance that the parties lived in Virginia, and the long time required to serve process. Lord Hardwicke said that if the witness were over seventy years of age the order would be of course.

The English practice was adopted by the Maryland Court of Chancery in *Lingam vs. Henderson,* 1 *Bland* 236, 238, where a commission *d. b. e.* was issued to take testimony of a witness who was alleged to be the only person by whom the plaintiffs expected to prove their claim, that he was then advanced in life and if deprived of his testimony they would not be able to establish their claim. In a note to this case there is stated a previous case as follows —

*Rymer vs. Dulany,* 1787. Petition for a commission *de bene esse,* stating that the petitioners, the plaintiffs, were in want of the testimony of Abraham Cream, of Frederick County, who was a material witness for the petitioners in the said cause, and who was about eighty years of age, and sick and impotent. Granted. *Chan. Pro. lib. S. H. H. lett. C. fol.* 296.

It was about 1851 that the act was passed rendering plaintiffs and defendants competent and compellable to give evidence, 14 & 15 *Vict. c.* 99, and after the passage of the statute allowing parties to be witnesses the rule was applied to examination of parties *d. b. e.* under the same conditions.

In *Forbes vs. Forbes,* 9 *Hare* 461, on application for a commission for the examination of a witness above seventy years of age (such witness being the complainant in the cause and the respondent in a cross cause, whose time for answering had expired, whose answer had not been put in, and being also the party who applied for the commission for the purpose of being examined in her own case under the statute 14 & 15 *Vict. c.* 99), the Court refused to impose it as a condition in making the order that the answer should be filed. The application was for a commission for the examination of the plaintiff as a witness *de bene esse,* she being above seventy years of age and in Scotland. Counsel for the defendant, who was also plaintiff in the cross-cause, asked that there might be made a term in the order that the plaintiff who now applied should put in her answer, either first or contemporaneously, in the cross-cause in which she was defendant. If the reason of losing her evidence from her age was sufficient ground for the application, according to the practice of the Court of Chancery, it was equally a ground for giving the plaintiff in the cross-cause the benefit of her discovery at the earliest moment. The examination of the parties themselves was a new proceeding under the recent statute, (14

& 15 *Vict. c.* 99,) and the Court in adapting its forms to the new prac-
tice would follow out its fundamental principles, one of which was
that he who comes for equity must do equity. The Vice Chancellor
(Sir G. J. Turner) said: "The motion is of course. I cannot impose
upon the party who applies for the order such a condition as is asked.
The statute which has come into operation was not intended to alter
the practice of the Court. I do not see any ground for distinguishing
this case from that of any other in which an aged witness is to be ex-
amined."